# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel., ) <br> ANTOINE TOLLIVER, #K-61235 ) <br> ) <br> Petitioner, ) <br> v. ) <br> ) <br> JAMES SCHOMIG, ) <br> ) <br> Respondent. ) | Case No. 00 C 7534 <br><br> Judge Joan B. Gottschall |

## MEMORANDUM OPINION AND ORDER

Following a mistrial in the circuit court of Cook County, Illinois, petitioner Antoine Tolliver was re-tried and convicted of the first-degree murder of Selwyn Phillips and attempted first-degree murder of Keywan Tolliver (no relation to petitioner) at the L-Town Food and Liquor Store in Chicago, Illinois on December 22, 1995. Tolliver was ultimately sentenced to consecutive terms of forty years and six years incarceration. Tolliver appealed his conviction and sentence to the Illinois Appellate Court, First District. Tolliver argued that he was denied his Sixth Amendment right of confrontation and a fair trial because he was not permitted to cross-examine the sole eyewitness about the witness' immigration status. He also alleged the denial of a fair trial based on the prosecution's comments during closing argument. Finally, he claimed that his counsel was ineffective when he failed to request that the trial court question jurors about an overheard remark made by one of the defense witnesses. The Appellate Court affirmed the conviction and sentence on December 30, 1999. Tolliver sought leave to appeal to the Illinois Supreme Court on February 2, 2000, raising issues identical to those in his direct appeal. The Illinois Supreme Court denied leave to appeal on April 5, 2000.

Tolliver now petitions this court for a writ of habeas corpus, maintaining that: (1) he was

denied his constitutional right of confrontation and a fair trial when the trial court failed to permit his counsel to cross-examine the State's only eyewitness regarding his immigration status; (2) he was denied effective assistance of trial counsel due to counsel's failure to seek a mistrial or have the trial court question the jurors regarding misconduct; (3) he was denied effective assistance of trial counsel due to counsel's failure to call available witnesses; (4) he was denied effective assistance of trial counsel due to counsel's failure to present a motion to suppress Tolliver's statement; and (5) he was denied effective assistance of trial counsel due to counsel's failure to move to exclude evidence of Tolliver's gang affiliation. Because the court finds the first issue to be dispositive, it need not address Tolliver's other purported bases for relief. For the reasons explained below, Tolliver's petition is granted.

**Background**

The State's version of what transpired on the evening of December 22, 1995 derives primarily from the testimony of Samir Younes. Younes testified as follows: On December 22, 1995, Younes was standing just inside the front door of the store. At 11:15 pm, a large, four-door brown car pulled up and parked near the store. Keywan Tolliver and Selwyn Phillips, along with Antoine Davis, exited the car, and Younes opened the door for them as they entered the store. Davis left the store with two other people, and Younes opened the door for them as they left. As Younes opened the door, he saw another car park behind the brown car. Younes identified Cliff Bryant as the driver of that car and petitioner as the passenger. After Younes held the door open for Bryant and petitioner to enter, petitioner stood about two feet away from Younes, with his side facing Younes. Petitioner looked at a clock which was above Younes' head and then Younes again opened the door as petitioner and Bryant exited the store. Bryant went to the car and double-parked it in

2

front of the store. Petitioner stood by the outside wall to Younes' immediate left. Younes then held the door open for Phillips and Keywan Tolliver as they left the store and saw them walk down the street to the right, with their backs facing the petitioner. Younes saw petitioner pull a gun out of his pocket and fire it at Phillips and Keywan Tolliver. Phillips was fatally struck and fell to the ground, and although Keywan Tolliver was also shot, he managed to run down the street. Petitioner got in the car with Bryant and left the scene. Younes locked the door and went to the back of the store, where he waited until police arrived. When the police arrived, Younes lied to the police and told them that he had not seen anything. He did not cooperate with the police because he was afraid and did not want to become involved. Six days later, Younes was again working at the liquor store when petitioner entered the store. After petitioner sat down about three feet away from Younes and stared at him for about ten to twelve seconds, Younes called a detective (who had arrested Younes three years before for a misdemeanor) and informed him that he just saw the shooter from the incident the week before. After giving a description of petitioner and a man who accompanied him, the police picked up petitioner and arrested him. After viewing a lineup at the police station, Younes identified petitioner as the shooter. Approximately twenty hours later, petitioner gave a transcribed statement admitting his involvement in the murder and attempted murder.

**Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petitioner is not entitled to a writ of habeas corpus unless the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *see also Williams v. Taylor*, 529 U.S. 362, 367 (2000). A state court's decision is "contrary to" clearly established Supreme Court law "if the

3

state court arrives at a conclusion opposite to that reached by the Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Williams*, 529 U.S. at 404. To demonstrate an "unreasonable application" of clearly established federal law, a habeas petitioner must establish that the state court unreasonably applied the controlling legal rule to the facts of the case. *Id.* at 407. The state court's application of Supreme Court precedent must be more than incorrect or erroneous. Rather, it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002) (state court decision must lie "well outside the boundaries of permissible differences of opinion").

**Failure to Allow Cross-Examination of Eyewitness**

Tolliver argues that he was denied his Sixth Amendment right to confront the witnesses against him and a fair trial when the trial court failed to allow defense counsel to cross-examine the State's only eyewitness regarding the witness' immigration status. At Tolliver's trial, the State called Samir Younes, an employee who was working at the liquor store when the shootings took place. Living in the United States since 1989, Younes was a native of Morocco who was employed by the L-Town Food and Liquor Store. His duties included opening the door for customers and watching the store for shoplifters. Younes was the only eyewitness to the shootings and was the only person to identify Tolliver as the shooter. The State moved *in limine* to prevent the defense from questioning Younes about his immigration status. Defense counsel argued that if Younes were an illegal immigrant he might have had a motive to testify in order to avoid deportation. In an attempt to establish that Younes was an illegal alien, Tolliver produced two letters from the U.S. Department of Justice, on behalf of the then-Immigration and Naturalization Service ("INS"). The

4

letters reported that the INS "cannot locate any records responsive to your subpoena [seeking INS records relating to Samir Younes]" and "no records have been located establishing that this individual has any immigration status in the United States." While the court recognized that a defendant has a right to cross-examine a witness who is an illegal alien, the court concluded that the letters produced by the defense did not establish that Younes was in the United States illegally, and granted the State's motion.

In addressing this issue on direct appeal, the Illinois Appellate Court upheld the trial court's determination that the two Department of Justice letters did not establish that Younes was, in fact, an illegal alien. The Illinois Appellate Court agreed with the trial court that the fact that the federal government had no record of Younes was not enough to establish that Younes was an illegal alien. In light of this, the Illinois Appellate Court concluded that the trial court did not abuse its discretion in not allowing the cross-examination.

Petitioner claims that he was "denied his constitutional rights of confrontation and a fair trial when the trial court would not permit defense counsel to cross-examine the State's only eyewitness about his immigration status" even though the defense produced the two INS letters. While not explained in any great detail, Tolliver seems to assert that the trial court's decision to disallow the cross-examination of Younes with respect to his immigration status was an "unreasonable application of federal law" because, although the state court correctly identified the governing legal principle (i.e., that a defendant has a constitutional right to confront a witness against him), it unreasonably applied that principle to the facts of the defendant's case.

The Sixth Amendment – applied to the states by the Fourteenth Amendment – guarantees the right of a criminal defendant to be confronted with the witnesses against him. *Denny v.*

*Gudmanson*, 252 F.3d 896, 900 (7th Cir. 2001). "[A] primary interest secured by [the Confrontation Clause] is the right of cross-examination[.]" *Douglas v. Alabama*, 380 U.S. 415, 418 (1965). Cross-examination is "the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316 (1974). In this case, petitioner's inability to cross-examine Younes as to his immigration status denied him the right of cross-examination secured by the Confrontation Clause. As explained below, the court finds that the state court's ruling was an "unreasonable application of federal law."

In this case, the trial judge demanded that Tolliver come forward with evidence that Younes was residing illegally in the United States before he would allow any cross-examination regarding Younes' immigration status. To that end, Tolliver produced two letters stating that the INS had no record whatsoever of Tolliver. This, combined with the undisputed fact that Tolliver was born in a foreign country and had been working in the United States at the time of the shooting, clearly indicate that Tolliver's presence in the United States was not sanctioned by the U.S. government. If Younes had been in the United States legally, certainly the INS would have had information documenting his entry into the country, as well as his application to work here. Petitioner's fundamental right to cross-examine a crucial witness as to his potential motive to fabricate testimony was unjustifiably curtailed by the trial judge. This decision was an "unreasonable application of federal law." "[A] reasonable state court judgment is one 'at least minimally consistent with the facts and circumstances of the case. . .even if it is not well reasoned or fully reasoned, or even if it is one of several equally plausible outcomes." *Searcy v. Jaimet*, 332 F.3d, 1081, 1089 (citing *Schaff v. Snyder*, 190 F.3d 513, 523 (7th Cir. 1999)). The court must conclude that the state court judgment, in light of the facts before the trial judge and the introduction of the two INS letters, was

neither "minimally consistent with the facts and circumstances of the case," nor was it "one of several equally plausible outcomes." Because the state court decision was objectively unreasonable, petitioner was denied his rights under the Confrontation Clause of the Sixth Amendment.

Having determined that the Illinois court was "objectively unreasonable" in denying petitioner the right to cross-examine Younes, the court must now consider whether or not the error was harmless. *Neder v. United States*, 527 U.S. 1 (1999) (recognizing that a "trial" error, as opposed to a more fundamental "structural" error, is subject to harmless error analysis in habeas cases); *United States v. Castelan*, 219 F.3d 690, 694 (7th Cir. 2000) (violation of Confrontation Clause was trial error subject to harmless error analysis). In other words, habeas relief cannot be granted unless the petitioner demonstrates that a trial error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (citing *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). The Supreme Court has clarified that a petitioner must prevail when "the record is so evenly balanced that a conscientious judge is in grave doubt as to the harmlessness of the error." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (explaining that a judge is in "grave doubt" when, "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error.").

In *Delaware v. Van Arsdall*, 475 U.S. 673 (1986), the Supreme Court set forth the following factors a court may consider in determining whether a violation of the Confrontation Clause was harmless error: "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and of course, the overall strength of the prosecution's case." *Id.* at 684.

7

The trial court's unreasonable denial of petitioner's Sixth Amendment right likely had a "substantial and injurious effect or influence" on the outcome of the trial, and therefore cannot be dismissed as merely "harmless error." Had the trial court allowed the defense to cross-examine Younes as to his immigration status, the jury "might have received a significantly different impression of [Younes'] credibility had [Tolliver's] counsel been permitted to pursue his proposed line of cross-examination." *Delaware*, 475 U.S. at 680. Younes was the sole eyewitness against petitioner and the reliability of his testimony was a critical issue for the jurors to resolve. Significantly, Younes' testimony was impeached with significant inconsistencies. Immediately after the shootings, Younes told the police that he was at the back of the store at the time of the incident and did not see the shootings. At trial, two police officers testified that Younes told them at the scene of the crime that there were *three* assailants, although at trial Younes denied telling the officers this fact. Also critical is the fact that six days passed before Younes informed the police that he had even seen the shooter and the driver (and could identify them). Significantly, Younes admitted lying to the police officers at the scene and the jury may have concluded that he also lied about seeing the shootings. Significantly, the jury knew that both the fundamentals (where he was standing at the time of the shootings and whether he had seen the shooter) and the details of the story (how many men were involved) told by Younes had changed over time. Had the jury also known about Younes' lack of documentation with the INS and the potential that he could be deported, a reasonable jury may have concluded that Younes' identification of petitioner was suspect.[1]

---

[1]Younes' trial testimony was also contradicted by other State witnesses. Keywan Tolliver's testimony that Younes opened the door for him as he left the liquor store was impeached by Keywan's testimony at the first trial that Younes was not next to the door when Keywan left the store and that he did not know where Younes was. While Younes testified that petitioner pulled up in a car as Antoine Davis was leaving the store, Davis testified that he did

8

While a defendant's confession normally constitutes very strong evidence of guilt, the court concludes in this case that Tolliver's statement is not so strong as to render the constitutional error harmless. In both trials, Tolliver testified that he was at a neighbor's house at the time of the shootings and he was coerced into confessing to crimes he did not commit. According to Tolliver, for the first 20 hours he was in police custody he maintained his innocence. Tolliver testified that after 20 hours of being handcuffed to a cell wall, being screamed at by a detective and assistant state's attorney, and being coached by the detective, Tolliver finally agreed to make a statement to the police. Tolliver testified that the assistant state's attorney told him that if he did not confess he would be executed within five years, but that if he made a statement he would be free within a year. According to Tolliver, his statement repeated the facts told to him by the detective and assistant state's attorney while they were interrogating him. Backing up Tolliver's assertion that he merely recited the facts provided to him and made up some facts to fill in where needed, the statement made by petitioner was contradicted by the physical evidence found at the scene. According to Tolliver's statement, the gun used in the shooting was an automatic weapon. However, the firearm expert testified that the gun that was used was a revolver, not a semi-automatic. In his statement, Tolliver also claimed that Keywan Tolliver stared at him immediately before the shooting; however, Keywan Tolliver testified that he never saw petitioner at the scene of the crimes.

Finally, in concluding that there was not overwhelming evidence of Tolliver's guilt, the court

---

not see a car in front of the store when he was coming out of the store. Although Younes testified that petitioner was standing right outside the store immediately before the shooting, Davis said that he did not see anyone in front of the store even though he looked back in the direction of the store at least twice. Finally, while Younes said that Cliff Bryant moved the car and double-parked it in front of the store before the shooting, neither Keywan nor Davis saw a car double-parked in front of the store.

9

also relies on the fact that the jury in petitioner's first trial, after hearing all the evidence in the case, could not reach a verdict on petitioner's guilt or innocence. In addition, the jury in the second case twice indicated that they could not reach a unanimous verdict before finally coming in after eight hours of deliberation with a guilty verdict.

In light of the above, the court concludes that the deprivation of petitioner's Sixth Amendment right was not harmless error.

## III. Conclusion

In accordance with 28 U.S.C. § 2254(d), the court grants Antoine Tolliver's petition for a writ of habeas corpus and orders respondent to release Tolliver from custody unless, within 30 days from the entry of this order, the State of Illinois announces its intention to retry Tolliver or files a notice of appeal.

Enter: _____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

Date: August 29, 2005